Lamnbck, J.
In the agreed statement of facts, upon which the cause was submitted to the Court of Com *253 mon Pleas, it was stipulated that the claimant is, and has been, a conscientious member of the Seventh-Day Adventist Church, which teaches as one of its tenets “that the seventh day of the week, commonly called Saturday, should be observed as the Sabbath.”
The Seventh-Day Adventist denomination holds that to perform secular work on its seventh day of the week is a violation of the law of God, and any member guilty of such violation is subject to the penalty of expulsion from the organized body of the Church.
The claimant refused to accept the position referral of January 13, 1950, because such employment required her to work on the Sabbath recognized by the Church to which she belonged.
In Kut v. Albers Super Markets, Inc., 146 Ohio St., 522, 66 N. E. (2d), 643, this court held that an employee who refused to work on Saturday, which was the day he observed as his Sabbath, was not available during the entire week for tvork in his usual trade or occupation and was not entitled to unemployment compensation benefits.
At that time, Section 1345-6, General Code (120 Ohio Laws, 666, 682), read in part as follows:
“a. No individual shall be entitled to any benefits unless he or she
66 * * #
“(4) is able to work and available for work in his usual trade or occupation, or in any other trade or occupation for which he is reasonably fitted-, # * *
6 6 # # #
“d. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual:
6 6 % # #
“(2) has refused to accept an offer of work for *254 which he is reasonably fitted '* * (Emphasis added.)
On May 23, 1949, Section 1345-6, General Code, was amended (123 Ohio Laws, 178, 192, Section 4141.29, Revised Code), effective August 22, 1949, to read in part as follows:
“a. No individual shall be entitled to any benefits unless he or she
í i # # *
“ (4) is able to work and available for suitable work and is actively seeking such work, either at a locality in which he has earned wages subject to the Unemployment Compensation Act during his base period or at a locality where such work is normally performed; * # *
ÍÍ # * #
“d. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual:
ÍÍ* * #
“ (2) has refused without good eau.se to accept an offer of suitable work, or has refused to accept a referral to suitable work when directed to do so by a local employment office of this state or another state;
(( # # #
“f. In determining whether any work is suitable for a claimant in the administration of the provisions of this act, the administrator shall, in addition to the determination required under subsection (e) above, consider the degree of risk to the claimant’s health, safety, and morals, his physical fitness for the work, his prior training and experience, his prior earnings, the length of his unemployment, the distance of the available work from his residence and his prospects for obtaining local work.” (Emphasis added.)
*255 Although Section 1345-6, General Code, was again amended in 1949, effective October 18, 1949, which last amendment is controlling in the instant case, there was no appreciable change in the provisions as last above quoted.
It should be noted that, at the time the Kut case was decided, Section 1345-6, General Code, provided for a standard based on the fitness of the claimant for the work.
By reason of the 1949 amendments, however, the standard is now whether the work is suitable for the claimant, subject to the test that “in determining whether any work is suitable * * * the administrator shall * * * consider the degree of risk to the claimant’s * * * morals.”
The claimant contends that to have engaged in the employment to which she was referred would have been a risk to her morals, because it would have required her to work on her Sabbath.
Is there a risk to a “claimant’s morals” to require him to engage in work on Saturdays when his bona fide religious convictions compel him to abstain from secular work on Saturdays?
“Morals” is defined in Webster’s New International Dictionary as the “science or doctrine of conduct, especially as to the sense of duty. ’ ’
There is no risk to the morals of a nonbeliever or a Christian who observes the Sunday Sabbath, if he works on Saturday, because such employment does not violate his “sense of duty.” What is moral to one person may be immoral to another. Moral standards change. Some acts which are considered moral today were deemed highly immoral a century ago, and conversely the standards of today recognize some things as being immoral which were formerly considered right and proper.
The test in the instant case, however, is not whether *256 the proffered employment presents a risk to the morals of a majority of onr citizens, but, as the statute specifies, whether it presents a risk to the “claimant’s * * * morals. ’ ’
The first moral obligation of a person is to remain true to his religious convictions and to conform to what he believes to be his sense of duty. Where one has been schooled to believe in and practice the tenets of a faith which compels him to abstain from secular work on Saturdays, and, by reason of such training and his conscientious affiliation with the church of such a faith, possesses a fixed, definite and imm'utable conviction that he must refrain from secular work on Saturdays, it would seriously offend the moral conscience of such a person to require him to engage in secular work on Saturday.
The test of an individual’s morals is subjective, and one’s morals is dependent upon his conscientious beliefs. The precepts of a religion in which one believes are an integral and essential part of one’s morals.
We are of the opinion that the acceptance of the proffered employment by the claimant in the instant case would have seriously offended the “claimant’s * * * morals” based on her sense of duty and her religious conscience. The evidence is uncontradicted that her refusal to accept was not fanciful, actuated by bad faith, or prompted by a desire to remain in the ranks of the unemployed, but was based solely on the fact that the proffered employment involved a risk to her morals.
The language in the 1949 amendment is substantially similar to that of the Unemployment Compensation Acts of many states. In a large majority of these states, such provisions have been interpreted to excuse rejection of proffered employment if such employment involves violation of religious conscience and thereby tends to offend a “ claimant’s * * * morals.”
*257 The decision of this court in Kut v. Albers Super Markets, Inc., supra, was based upon statutory language which was substantially and materially different from that of the present statute. It is our interpretation that the General Assembly intended, by the 1949 amendments, to confer rights based upon bona fide moral convictions. Conscientious religious beliefs constitute an integral part of an individual’s morals.
In view of this interpretation of the statute, it is unnecessary to pass upon the constitutional questions raised by the claimant.
In accordance with the views herein expressed, the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Taft, Zimmerman and Stewart, JJ., concur.
Weygandt, C. J., Middleton and Hart, JJ., dissent.